NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| HOSEA L. ANDREWS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No.: 06-1039 (JLL) |
| v. ) | |
| ) | **OPINION** |
| HANOVER MARRIOT, ANDREW ) | |
| KELLER, and JANET FROSTIC, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**LINARES, District Judge.**

The instant matter comes before the Court on the November 13, 2007, motion of Plaintiff

Hosea L. Andrews ("Plaintiff" or "Andrews") for partial summary judgment [CM/ECF #41]

against Defendants Marriott Hotel Services, Inc. ("Marriott"), Andrew Keeler ("Keeler"), and

Janet Frostick ("Frostick") (collectively "Defendants").[1]  Also before the Court at this time is

Defendants' joint cross-motion for summary judgment [CM/ECF #53] against Andrews filed

January 18, 2008.  No oral argument was heard.  Fed. R. Civ. P. 78.  For the reasons set forth

herein, Defendants' motion for summary judgment is granted, and Plaintiff's motion for partial

summary judgment is denied.

## INTRODUCTION

This Court filed Plaintiff's <u>pro se</u> Complaint on August 11, 2006, after granting

---

[1]According to Defendants' submissions, Andrews incorrectly named all of the parties to
this action.  As all of the Defendants have supplied corrected names to this Court in various
pleadings, this Court will refer to them by their true appellations.

Plaintiff's request to proceed in forma pauperis.  Plaintiff seeks relief for alleged violations of the New Jersey Law Against Discrimination ("NJLAD"), the New Jersey Conscientious Employee Act ("CEPA"), Title VII, 42 U.S.C. §§ 1981, 1983, 1985, the First Amendment, the Fourteenth Amendment, the Constitution of New Jersey, intentional infliction of emotional distress, fraud, misrepresentation, and negligence.  (Compl., ¶¶ 4, 6, passim.)  Defendants concede that Andrews's Complaint asserts all of these claims but for the claim for intentional infliction of emotional distress and any claim under the New Jersey Constitution.  (Def. Opp. Br. at 1.)

Andrews, an African-American, was employed by Marriott from May 22, 1992, until February 18, 2005, at which time he was terminated for "poor work performance."  (Andrews Dec. ¶¶ 2-3.)  Andrews was hired by Marriott as a "dishwasher and/or utility person."  (Def. Local Civ. R. 56.1 Statement ¶ 1.)  In 1995, despite receiving warnings under Marriott's employee discipline policy, Andrews received a promotion to station attendant/buffet attendant. (Id. ¶¶ 13-14.)  After expressing his desire to become a cook, Andrews began working as a cook for Marriott in 1997.  (Id. ¶ 15.)  Andrews was disciplined several times as a cook in 2004, for leaving early, failing to meet time performance requirements, and wasting food.  (Id. ¶¶ 23-25, 28-30, 33-35, 40-42.)  In December, 2004, Andrews was reclassified by Marriott as a station attendant, with its lower salary, and would only receive the higher cook salary when performing cook functions.  (Id. ¶ 45.)  Andrews refers to this policy of altering his wage according to his function as "double coding."  (Id. ¶ 46.)  Marriott claims that several incidents where Andrews prepared the incorrect food for menus during February, 2005, resulted in Andrews being terminated under Marriott's progressive discipline policy.  (Id. ¶¶ 49-56.)  Andrews alleges that he was fired as a result of his complaints about the system of double coding to his supervisors,

and that he was subject to double coding because of racial discrimination.  (Andrews Dec. ¶¶ 6-7; Compl. at ¶¶ 19-22.)

Andrews moved for partial summary judgment before this Court on November 17, 2007, via an over-length brief and a declaration by himself.[2]  (Pl. Br.; Andrews Dec.)  This Court construes his motion as one for summary judgment as to liability on all counts.  (Pl. Br. at 47-48.)  Defendants responded with a cross-motion for summary judgment and supporting documentation.  (Def. Opp. Br. at 1.)

**DISCUSSION**

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The burden then shifts to the non-moving party to present evidence that a genuine, fact issue compels a trial.  Id. at 324.  In so presenting, the non-moving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts."  Matsushita

_____

[2]Parties, even those proceeding pro se, must comply with Local Civil Rule 7.2(b), and limit the length of their briefs accordingly.  Furthermore, Local Civil Rule 7.1 specifies the timing and number of replies that are permissible, and expressly limits the use of sur-replies to instances in which a party has obtained prior permission of the District Judge or Magistrate Judge assigned to the case.  Despite Andrews's non-compliance with some of these rules, this Court elects to consider Plaintiff's various submissions on the current motion.  It will not, however, address any submissions by or arguments related to Plaintiff's "attorney-in-fact," who is not a party to this case nor representing Plaintiff in this matter.  (Order of M.J. Claire C. Cecchi of June 21, 2007.)

Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).   Thus, the non-

moving party may not rest upon the mere allegations or denials in its pleadings.  See Celotex,

477 U.S. at 324.  Further, the non-moving party cannot rely on unsupported assertions, bare

allegations, or speculation to defeat summary judgment.  See Ridgewood Bd. of Educ. v. N.E. ex

rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999).  The Court must, however, consider all facts and

their reasonable inferences in the light most favorable to the non-moving party.  See

Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).

## I.    Title VII

Plaintiff argues that because he has met his prima facie burden, and Defendants have not

tendered sufficient material facts demonstrating that any legitimate nondiscriminatory rationale

for his termination was non-pretextual, he is entitled to summary judgment.  (Pl. Br. ¶¶ 1, 5-14.)

Defendant, on the contrary, argues that Andrews failed to submit his Title VII claim before the

EEOC, and therefore failed to meet a threshold requirement of claims under that statutory

scheme.  (Def. Opp. Br. at 5.)

"Title VII plaintiffs may not seek relief or redress in federal court for any claim that has

not first been presented to the United States Equal Employment Opportunity Commission."

Longoria v. New Jersey, 168 F. Supp 2d 308, 314 (D.N.J. Oct. 17, 2001).  See also Antol v.

Perry, 82 F.3d 1291, 1295 (3d Cir. 1996) (affirming summary judgment for failure to exhaust

Title VII claim before the EEOC.  Andrews offers no factual basis for this Court to find that he

submitted his claim before the EEOC, and makes no argument that exhaustion would be excused

under the facts of this case.  Plaintiff, therefore, having failed to meet the threshold requirement

of exhaustion, cannot succeed on his Title VII claims, and this Court must deny his motion for summary judgment as to those claims and grant Defendants' motion for summary judgment insofar as it addresses said claims.

## II.     New Jersey Law Against Discrimination and Common Law Claims

The NJLAD seeks to redress instances of race-, gender-, or age-based discrimination. N.J. Stat. Ann. §§ 10:5-3, 10:5-12.  The Third Circuit has found that a claim of discrimination under the NJLAD "parallels" the same claim under Title VII of the Civil Rights Act of 1964, and accordingly instructs district courts to apply the burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  Monaco v. American Gen. Assurance Co., 359 F.3d 296, 300, 305 (3d Cir. 2004).  The McDonnell Douglas analysis consists of three steps. First, a plaintiff must establish a prima facie case.  Monaco, 359 F.3d at 300.  Second, if the plaintiff meets this initial burden, the employer must articulate a legitimate non-discriminatory reason for terminating the employee.  Id.  Third, should the employer succeed in carrying this burden, the plaintiff may rebut the employer's reason, showing that it was pretextual.  Id.  The NJLAD provides a single statutory means of relief that has been found to be coextensive with common law claims based on employment discrimination.  Catalane v. Gilian Instrument Corp., 638 A.2d 1341, 1349 (N.J. Super. Ct. App. Div. 1994).  "[S]upplementary common law causes of action may not go to the jury when a statutory remedy under the LAD exists."  Catalane, 638 A.2d at 1349.  In this case, Andrews's common law causes of action are all rooted in, and seek remedies for, his termination from Marriott.  (Compl. ¶¶ 32-34, 36-38, 39-43.)

Plaintiff asserts that he is entitled to partial summary judgment on his NJLAD claims for

the same reasons that he is entitled to summary judgment on his Title VII claims: that he has met

his burden in presenting a prima facie case and that Defendants have presented no legitimate

nondiscriminatory reason for terminating him that is not pretextual.  (Pl. Br. ¶¶ 1, 5-14.)

Defendants argue that Andrews has not established his prima facie case, private wage disputes

such as Andrews's are not actionable under the NJLAD, and that there are no material facts

available to rebut Defendants' legitimate nondiscriminatory reason for terminating Andrews.

(Def. Opp. Br. at 14-18.)

### A.     NJLAD Retaliation for Protected Activity

To proceed with his retaliation claims under the NJLAD, Andrews must first show that

"(1) claimant engaged in a protected activity known to the employer, (2) claimant thereafter was

subjected to adverse employment decision by the employer, and (3) there was a causal link

between the two."  Jamison v. Rockaway Twp. Bd. of Educ., 577 A.2d 177, 182 (N.J. Super. Ct.

App. Div. 1990).  The gravamen of Andrews's pleading and proffered evidence that he engaged

in protected activity under the NJLAD is that he complained to Marriott supervisors about

discrepancies in his wages due to double coding of his work functions.  (Compl. ¶ 18-25;

Andrews Dec. ¶ 6.)

In order for Andrews to succeed in showing that he engaged in protected activity, he must

show that Defendants' practice of double coding his work functions was unlawful under the

NJLAD.  Young v. Hobart West Group, 897 A.2d 1063, 1073 (N.J. Super. Ct. App. Div. 2005).

While Andrews states repeatedly in his moving papers that this was protected activity, he points

to no caselaw, statute, or other public policy of New Jersey providing that such a practice is

protected.  (Andrews Dec. ¶ 6; Pl. Br. ¶¶ 1, 2, 4, 11, 13, 17.)  Defendants, on the other hand, argue that New Jersey courts have, in other employment contexts, found that wage disputes <u>qua</u> wage disputes of the kind put at issue here do not implicate any such public policy.  Def. Opp. Br. at 16.  <u>See</u> <u>Schwartz v. Leasametric, Inc.</u>, 539 A.2d 744, 748-49 (N.J. Super. Ct. App. Div. 1988) (discussing wrongful discharge cause of action).  This Court agrees that Andrews did not engage in protected activity under the NJLAD by simply disputing his employer's manner of calculating his wages because New Jersey courts have stated that New Jersey does not recognize a strong public policy regarding that issue.  <u>Schwartz</u>, 539 A.2d at 748-49.  Defendants, therefore, are entitled to summary judgment on retaliation under the NJLAD, and Plaintiff's motion for same is denied.

### B.    NJLAD Discriminatory Discharge

With respect to Andrews's claim for discriminatory discharge under the NJLAD, his prima facie case must establish "[1] that he was in the protected group, [2] that he was performing his job at a level that met his employer's legitimate expectations, [3] that he nevertheless was fired, and [4] that [the employer] sought someone to perform the same work after he left."  <u>Mogull v. CB Commercial Real Estate Group, Inc.</u>, 744 A.2d 1186, 1193 (N.J. 2000) (internal ellipsis omitted).  Andrews has satisfied this Court that, as an African-American, he is a member of a protected group, and that he was fired.  Assuming for the purposes of this motion that Andrews has satisfied the remainder of his prima facie case, the next step is to proceed to examine whether or not Defendants have established a legitimate nondiscriminatory rationale for terminating Andrews.  <u>Cinelli v. United States Energy Partners</u>, 77 F. Supp 2d 566, 577 (D.N.J. Sept. 21, 1999).  Defendants have met their burden in showing that Andrews was

7

fired under Marriott's progressive discipline policy for inability to perform his functions as line cook and station attendant.  (Def. Opp. Br. at 17-18; Local Civ. R. 56.1 Statement ¶¶ 49-56.)

In order to proceed to trial at this point, Andrews must present sufficient evidence to demonstrate that a genuine issue of material fact exists regarding whether or not Marriott's firing of him under their progressive discipline policy was pretextual.  Cinelli, 77 F. Supp 2d at 577-78. Andrews states in his declaration that Defendants' proffered reason for his dismissal is "false." (Andrews Dec. ¶ 2.)  Such a statement is no more than an unsupported assertion of Andrews's personal belief as to the motivations of others, and cannot establish a disputed material fact as to the issue of pretext. Ridgewood Bd. of Educ.,172 F.3d at 252.  Similarly, Andrews's statement in his brief that he summarily denies certain assertions in Defendants' Local Civil Rule 56.1 Statement, while similar to the language often used by parties in submitting an answer to a complaint, is the kind of unsupported assertion that cannot withstand a motion for summary judgment.  Id.; Pl. Reply Br. ¶ 47.  Merely advising the Court that the contents of a paragraph in a declaration or Local Civil Rule 56.1 Statement may, for an unexplained reason, violate one of the Federal Rules of Evidence without identifying the particular fact excluded thereunder does not satisfy Andrews's burden on this motion to present evidence to a jury concerning pretext. Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994) ("We can reject out of hand . . . that the plaintiff can avoid summary judgment simply by arguing that the factfinder need not believe the defendant's proffered legitimate explanations . . . ."); Pl. Reply Br. ¶ 47.  This Court, therefore, denies Plaintiff's motion regarding the claim for discriminatory discharge under the NJLAD, but grants Defendants' motion for summary judgment as to this issue.

### C.    NJLAD Hostile Work Environment

8

"To establish a cause of action under the [NJLAD] based on a hostile work environment, plaintiffs must satisfy each part of a four-part test.  Specifically, they must show that the complained-of conduct (1) would not have occurred but for the employee's protected status, and was (2) severe or pervasive enough to make a (3) reasonable person believe that (4) the conditions of employment have been altered and that the working environment is hostile or abusive."  Shepherd v. Hunterdon Developmental Ctr., 803 A.2d 611, 625 (N.J. 2002).  In determining whether a work environment presents hostility that is severe and pervasive, New Jersey courts look to whether a reasonable person would consider the working conditions to be hostile and whether or not a reasonable person would believe that the terms and conditions of employment had changed.  Shepard, 803 A.2d at 625-26 (collecting cases).

Here, while Andrews has stated that he experienced a "supervisor screaming and hollering at me in front of other employees" and that he "was made to feel uncomfortable by the racially insensitive behavior by management staff," including "derogatory comments," Andrews has not met the Shepherd elements of a hostile work environment claim.  (Andrews Dec. ¶¶ 2, 5, 6, 7.)  Defendants demonstrate, through Plaintiff's own deposition, that Andrews's protected status as an African-American was not the but-for cause of any workplace hostility.[3]  Shepherd,

---

[3]Defendants refer in their brief to Andrews's response to a question inquiring as to perceived racial discrimination by Andrews's immediate supervisor.  Def. Opp. Br. at 14.  Andrews's response was: "I don't know because he is the same race.  That is hard to call."  Id.  This Court considers Andrews's response as one indicating that his immediate supervisor's comments were insufficiently severe or pervasive to warrant consideration by the jury under Shepherd.  803 A.2d at 625.  This Court, however, gives no weight to any implication in Defendants' brief that members of the same group cannot discriminate against one another, as the law is well-settled that such discrimination can exist.  See, e.g., Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 78 (1998) (discussing same-gender discrimination); Castenada v. Partida, 430 U.S. 482, 499 (1977) ("Because of the many facets of human motivation, it would

803 A.2d at 625; Def. Opp. Br. at 14; Def. Local Civ. R. 56.1 Statement ¶¶ 59-61, 62, 64-66.

Andrews admitted in his deposition that his work environment's hostility was not related to his

race.  Def. Local Civ. R. 56.1 Statement ¶ 65.  Furthermore, while it is a closer case, Andrews's

proffered evidence is no more than a recapitulation of the allegations of his complaint, and is not

sufficient to raise an issue of material fact as to the severity and pervasiveness of any

discrimination to prevail in his motion for summary judgment as to those elements of a hostile

work environment claim.  See Ridgewood Bd. of Educ.,172 F.3d at 252 (noting that

"[s]peculation and conclusory allegations" do not suffice at summary judgment).  This Court,

therefore, grants Defendants' motion for summary judgment on Andrews's claim for a hostile

work environment under the NJLAD, and denies that of Plaintiff.

### D.    NJLAD Disparate Treatment

Andrews makes a claim of disparate treatment discrimination under the NJLAD in his

complaint.  (E.g., Compl. ¶¶ 4, 6, 20, 22-23.)  Disparate treatment claims under the NJLAD

require a plaintiff to prove a prima facie case under the familiar McDonnell Douglas framework:

"that he or she (1) belongs to a protected class; (2) applied for or held a position for which he or

she was objectively qualified; (3) was not hired or was terminated from that position; and (4) the

employer sought to, or did fill the position with a similarly-qualified person."  Gerety v. Atlantic

City Hilton Casino Resort, 877 A.2d 1233, 1237 (N.J. 2005).  The employer must then make a

showing that the action was taken for a legitimate nondiscriminatory reason, which the employee

may rebut with evidence that the employer's rationale was pretextual.  Gerety, 877 A.2d at 1237.

---

be unwise to presume as a matter of law that human beings of one definable group will not
discriminate against other members of their group.").

Assuming <u>arguendo</u> that Andrews succeeds in his prima facie burden in this case, Defendants have clearly met their "burden of production" in demonstrating a legitimate nondiscriminatory rationale for terminating Andrews under Marriott's progressive discipline policy.  <u>Woods-Pirozzi v. Nabisco Foods</u>, 675 A.2d 684, 274 (N.J. Super. Ct. App. Div. 1996). Andrews was terminated by Marriott only after repeated written warnings for poor workplace performance.  (Def. Opp. Br. at 17-18; Def. Local Civ. R. 56.1 Statement ¶¶ 22-55.)  Andrews, however, brings forth no evidence aside from conclusory assertions in his declaration to demonstrate pretext on the part of Marriott other than the falsity of Marriott's rationale. (Andrews Dec. ¶ 2.)   Plaintiff is correct that the burden upon him to present evidence of pretext is not difficult: "at summary judgment a plaintiff need only present evidence from which a reasonable factfinder could conclude *either* that the defendant's proffered justifications are not worthy of credence *or* that the real reason for the decision was discrimination."  <u>Torre v. Casio, Inc.</u>, 42 F.3d 825, 832 (3d Cir. 1994) (emphasis in original).  Andrews's mere assertion about the untruth of Defendants' rationale for his termination, unsupported by any facts, however, does not suffice to throw any doubt on the legitimacy of that rationale.  Therefore, for reasons identical to those discussed <u>supra</u> in this Court's analysis of Andrews's discriminatory discharge claim under the NJLAD, this Court denies Andrews's motion for summary judgment on his disparate treatment claim under the NJLAD and grants that of Defendants as to the same claim.

### E.   Common Law Claims

Andrews asserts claims for some common law torts related to his discharge.  (Compl. ¶¶ 4, 6.)  Both parties move for summary judgment on those grounds, but this Court is compelled to grant summary judgment for Defendants, as "the [New Jersey] Supreme Court does not intend to

11

allow a supplementary common law cause of action where the NJLAD provides a remedy for the wrong." Catalane, 638 A.2d at 1349.  Andrews brings common law claims for intentional infliction of emotional distress, fraud, misrepresentation, and negligence.  (Compl. ¶¶ 4, 6.)  The factual predicates for these claims in the Complaint are the same as those provided for Andrews's employment claim, and are precluded by the exclusivity of the NJLAD.  See Metzler v. American Transp. Group, L.L.C., 2008 WL 413311, at *4 (D.N.J. Feb. 13, 2008) (Linares, J.) (dismissing claims for negligent and intentional infliction of emotional distress); Quarles v. Lowe's Home Centers, Inc., 2006 WL 1098050, at *4 (D.N.J. Mar. 31, 2006) (dismissing claim for intentional infliction of emotional distress); Compl. ¶¶ 4, 6, 31-43.  This Court, therefore, denies Andrews's motion for summary judgment, and grants that of Defendants with respect to the common law claims.

## III.    New Jersey CEPA

New Jersey's CEPA statute protects an employee from retaliation by his employer in cases where the employee "blows the whistle" or complains about illegal or improper conduct. See Reynolds v. TCM Sweeping, Inc., 340 F. Supp 2d 541, 545 (D.N.J. Oct. 12, 2004) (citing Hernandez v. Montville Twp. Bd. of Educ., 808 A.2d 128 (N.J. Super. Ct. App. Div. 2002)). In order to establish a CEPA claim, Plaintiff must demonstrate that (1) he reasonably believed that Defendant's conduct was violating a law, rule, regulation, or clear mandate of public policy; (2) he performed whistle-blowing activity; (3) Defendant took an adverse employment action against him; and (4) there was a causal link between his whistle-blowing activity and the adverse employment action. See, e.g., Dzwonar v. McDevitt, 828 A.2d 893, 900 (N.J. 2003).

12

Plaintiff argues that he is entitled to summary judgment because he has "demonstrated by way of [his] proofs" that Defendants illegally retaliated when he was terminated after complaining to Human Resources concerning his wages. (Pl. Br. ¶¶ 49-54.) Defendant seeks summary judgment with regard to Andrews's CEPA claim on three theories: first, that Andrews has not identified a statute, regulation, or New Jersey public policy that would have been violated by Defendants' acts; second, that the absence of any showing that Defendants' legitimate nondiscriminatory rationale for firing Andrews was a pretext mandates summary judgment; and third, that Andrews's CEPA claim is time-barred. (Def. Opp. Br. at 16-18.) As this Court finds that Defendant's first and third arguments mandate dismissal of Andrews's CEPA claims, it will not reach the issue of pretext.

With regard to Defendants' first contention, they rely upon Falco v. Community Medical Center, 686 A.2d 1212 (N.J. Super Ct. App. Div. 1997), for the proposition that "courts evaluating a claim under CEPA must make a determination regarding the 'specific terms of a statute or regulation, or the clear expression of public policy, which would be violated if the facts are alleged as true.'" Falco has been expressly overruled by the New Jersey Supreme Court. Dzwonar, 828 A.2d at 900-01. New Jersey law requires a lesser showing than Defendants maintain at the summary judgment stage:

> We therefore conclude that N.J.S.A. 34:19-3c does not require a plaintiff to show that a law, rule, regulation or clear mandate of public policy actually would be violated if all the facts he or she alleges are true. Instead, a plaintiff must set forth facts that would support an objectively reasonable belief that a violation has occurred. In other words, when a defendant requests that the trial court determine as a matter of law that a plaintiff's belief was not objectively reasonable, the trial court must make a threshold determination that there is a substantial nexus between the

13

>complained-of conduct and a law or public policy identified by the
>court or the plaintiff.

Id. at 901-02.  For reasons similar to those described supra in this Court's discussion of Plaintff's

NJLAD claims, however, it is clear that there is no objectively reasonable belief that double

coding would violate New Jersey's statutes, regulations, or public policy.  Courts in New Jersey

have failed to identify public policies in favor of protecting at-will employees from dismissal

when engaged in wage disputes with their employers.  Alexander v. Kay Finlay Jewelers, Inc.,

506 A.2d 379, 381 (N.J. Super. Ct. App. Div. 1986) ("There is no statutory or regulatory

proscription against a firing in retaliation for the institution of a civil action against the employer

as a means of resolving a salary dispute.").  In the absence of such an objectively reasonable

belief, Plaintiff's CEPA claim fails.

Andrews's CEPA claim must also fail because it is time-barred.  "An employee's CEPA

claim accrues on the date of his actual demotion, suspension or termination of employment."

Villalobos v. Fava, 775 A.2d 700, 707 (N.J. Super. Ct. App. Div. 2001).  The text of CEPA sets

forth a one-year statute of limitations.  "Upon a violation of any of the provisions of this act, an

aggrieved employee or former employee may, within one year, institute a civil action in a court

of competent jurisdiction."  N.J. Stat. Ann. § 34:19-5.  Andrews was terminated on February 18,

2005.  (Compl. ¶ 16.)  His complaint was received by this Court on March 6, 2006.  Andrews

delayed filing his CEPA claim for more than one year, and therefore this Court must deny his

motion for summary judgment and grant that of Defendants.

**IV.     Constitutional and § 1983 Claims**

A plaintiff may not bring a § 1983 claim or a federal constitutional claim absent state

action.  Versarge v. Township of Clinton, 984 F.2d 1359, 1363 (3d Cir. 1993); Carter v. City of

Philadelphia, 989 F.2d 117, 119 (3d Cir. 1993).  Defendants aver, in their brief and their

statement of uncontested material facts, that they are not state actors.  (Def. Opp. Br. at 6; Def.

Local Civ. R. 56.1 Statement ¶¶ 2-4.)  Andrews makes no counterargument to this proposition in

any of the filings extant on the docket.  Because state action is a requirement to bring his claims

under § 1983 and the First and Fourteenth Amendments of the United States Constitution, and

there are no facts demonstrating any state action in this case, Plaintiff's motion is denied insofar

as it requests summary judgment regarding § 1983 or his Federal Constitutional claims, and

Defendants are entitled to summary judgment on those claims.

The New Jersey Constitution, however, is not interpreted to provide rights coextensive

with that of the Federal Constitution in all cases.  See, e.g., Planned Parenthood of Central N.J. v.

Farmer, 762 A.2d 620, 629 (N.J. 2000) (finding a more expansive right to privacy under the New

Jersey Constitution).  Here, where Andrews's Complaint states that it seeks relief offered by the

New Jersey Constitution, but does not make arguments separate from those he makes under the

Federal Constitution, this Court will construe Andrews's pleadings as requesting relief under the

portions of the New Jersey Constitution paralleling the his arguments under First and Fourteenth

Amendments of the Federal Constitution.  (Compl. ¶ 4.)

The New Jersey Constitution provides that "[a]ll persons are by nature free and

independent, and have certain natural and unalienable rights, among which are those of enjoying

and defending life and liberty, of acquiring, possessing, and protecting property, and of pursuing

and obtaining safety and happiness."  N.J. Const. Art. 1, ¶ 1.  The Courts of New Jersey have

interpreted that language as embodying principles of equal protection and due process similar to

15

those guaranteed by the Fourteenth Amendment of the U.S. Constitution.  <u>Sojourner A. v. New Jersey Dept. of Human Servs.</u>, 828 A.2d 306, 332 (N.J. 2003).  While New Jersey utilizes a different test for evaluating potential infringements on individuals' equal protection and due process rights, state action remains a requirement of both.  <u>Sojourner A.</u>, 828 A.2d at 333 (balancing "the nature of the affected right, the extent to which the governmental restriction intrudes upon it, and the public need for the restriction"); <u>Hernandez v. Don Bosco Preparatory High</u>, 730 A.2d 365, 372 (N.J. Super. Ct. App. Div. 1999) (finding no due process claim for dismissal from private school under New Jersey Constitution).  Since Andrews has not alleged state action, and state action remains a prerequisite for equal protection and due process claims under the New Jersey Constitution, Defendants are entitled to summary judgment on these claims and Andrews's motion for summary judgment on same must be denied.

State action, however, is not a prerequisite for all actions brought under the New Jersey Constitution.  "[T]he rights of speech and assembly guaranteed by the State Constitution are protectable not only against governmental or public bodies, but under some circumstances against private persons as well."  <u>State v. Schmid</u>, 423 A.2d 615, 628 (N.J. 1980).  Claims for violation of an individual's freedoms of speech and assembly are "available against unreasonably restrictive or oppressive conduct on the part of private entities that have otherwise assumed a constitutional obligation not to abridge the individual exercise of such freedoms because of the public use of their property."  <u>Schmid</u>, 423 A.2d at 628.  New Jersey, when evaluating a freedom of expression claim under <u>Schmid</u>, looks to "(1) the nature, purposes, and primary use of such private property, generally, its "normal" use, (2) the extent and nature of the public's invitation to use that property, and (3) the purpose of the expressional activity undertaken upon such property

in relation to both the private and public use of the property." <u>Committee For A Better Twin</u>

<u>Rivers v. Twin Rivers Homeowners' Ass'n</u>, 929 A.2d 1060, 1068 (N.J. 2007) (quoting <u>Schmid</u>,

423 A.2d at 615).  Andrews makes no claim or allegation in his Complaint that Marriott assumed

any "constitutional obligation" to afford persons freedom of expression on its property.  In the

absence of such a nexus, Andrews is not entitled to summary judgment on this claim because he

fails to present any competent evidence to this Court of what "normal" use of the Marriott in

question is or how his expression relates to either the public or the private use of the property.

<u>Committee For A Better Twin Rivers</u>, 929 A.2d at 1068.  Defendants' argument that Andrews's

claim should be denied because it fails to demonstrate "state action," while not directly

responsive to the inquiry under <u>Schmid</u>, underscores that in this instance there is no

demonstration of a "public use" in the context of Andrews's claim sufficient for him to succeed

on his claim and therefore summary judgment for Defendants on this issue is appropriate.

## V.      Claims Under § 1981 and § 1985

Section 1981 prohibits "racial discrimination in the making and enforcement of contracts

and property transactions."  <u>Brown v. Philip Morris Inc.</u>, 250 F.3d 789, 796 (3d Cir. 2001).  "In

order to state a claim under § 1981, a plaintiff must allege facts in support of the following

elements: (1) [that plaintiff] is a member of a racial minority; (2) intent to discriminate on the

basis of race by the defendant; and (3) discrimination concerning one or more of the activities

enumerated in the statute[,] which includes the right to make and enforce contracts . . . ."  <u>Brown</u>,

250 F.3d at 797 (internal quotation omitted).  Given that Andrews's Complaint alleges nothing

involving a Federal office, Federal officer, or obstruction of justice, this Court finds that §

1985(3) is the only subsection of that statute applicable in the present matter.  Section 1985(3),

17

which provides a remedy for conspiracies affecting civil rights, requires "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States." Farber v. City of Paterson, 440 F.3d 131, 134 (3d Cir. 2006).

Plaintiff argues that he is entitled to summary judgment on his § 1981 and § 1985 claims because Defendants have not brought forward sufficient facts to deny his claims. (Pl. Br. ¶¶ 1, 9.) Defendants argue that Andrews failed to state a claim under § 1981 and that insufficient evidence exists of racial discrimination to send his claims to a jury. (Def. Opp. Br. at 7-8.) With respect to Andrews's § 1985(3) claim, Defendants claim that no evidence exists in the record to support the requisite conspiracy. (Id. at 8.)

### A.      Section 1981

Section 1981 claims alleging racial discrimination in the employment context are analyzed using the same framework as Title VII and NJLAD employment claims. Jones v. School Dist. of Philadelphia, 198 F.3d 403, 410 (3d Cir. 1999). Similar to the NJLAD, exhaustion is not required under § 1981 for claims concerning private employment. Young v. International Tel. & Tel. Co., 438 F.2d 757, 763 (3d Cir. 1971). Because this Court has already concluded that Andrews has not met his burden in demonstrating a pretextual reason for Marriott's performance-based termination of him in 2005, Part II.D supra, no further discussion is required here. Therefore Andrews's motion for summary judgment on his § 1981 claim is

denied, and Defendants' motion for summary judgment is granted.

### B.    Section 1985

In order to succeed in his motion for summary judgment, Andrews's § 1985 claim must satisfy all of the elements of the cause of action; as the Defendants claim that Andrews has failed to satisfy one of those elements, this Court will begin by examining whether or not Andrews has failed to satisfy the conspiracy element.  A § 1985(3) claim requires that two or more persons have conspired for the purpose of denying a person certain civil rights.  42 U.S.C. § 1985(3) (covering conspiracies concerning violations of equal protection, privileges and immunities, and election rights).  Here, although Andrews does allege, and the facts demonstrate, that Marriott employees agreed on certain issues regarding the decision to terminate him on February 18, 2005, the only support in the record for an agreement existing to deprive Andrews of his equal protection rights, privileges and immunities rights, or election rights are the numerous conclusory allegations in his Complaint, his moving papers, and his declaration, which are belied by the statements in his deposition.  (Compl. ¶¶ 7, 13, 27, 44; Pl. Br. ¶¶ 1, 45; Def. Local Civ. R. 56.1 Statement ¶¶ 48-58.)  Andrews's deposition, on which he claims to rely, states that he did not feel discriminated against at Marriott.  (Pl. Reply Br. ¶ 33; Def. Local Civ. R. 56.1 Statement ¶ 65.)   Mere legal conclusions do not create material issues of fact where the record is in clear contradiction to those legal conclusions.  See Berckeley Inv. Group, Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006) ("Although the non-moving party receives the benefit of all factual inferences in the court's consideration of a motion for summary judgment, the nonmoving party must point to some evidence in the record that creates a genuine issue of material fact.").  Andrews offers insufficient support for his § 1985 claim at summary judgment because he brings

forward argument and suspicion, but no facts, to support his allegations of a discriminatory conspiracy.  Berckeley Inv. Group, Ltd., 455 F.3d at 201 ("[S]ummary judgment is essentially "put up or shut up" time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument.").  Furthermore, because Andrews alleges a private conspiracy, he would have to allege that his right to be free from involuntary servitude or his right to interstate travel had been impaired by Defendants.   Brown, 250 F.3d at 805.  Andrews does not claim impairments to either of these rights, and this Court finds that Andrews's motion for summary judgment must be denied with respect to his § 1985(3) claim, and grants Defendants' motion for summary judgment for same.

**CONCLUSION**

For the forgoing reasons, this Court grants the motion for summary judgment by Defendants in its entirety, and denies Plaintiffs' motion for partial summary judgment in its entirety.  An appropriate Order accompanies this Opinion.

DATED: June 25, 2008                              /s/ Jose L. Linares
                                                     United States District Judge